# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| James Key III | ) Case No.   1:25-mj-00088-SAB |
| | ) |
| | ) |
| | ) |
| | ) |
| *Defendant(s)* | |

**FILED**

**Aug 19, 2025**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

## CRIMINAL COMPLAINT BY RELIABLE ELECTRONIC OR TELEPHONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____August 18, 2025_____ in the county of _____Fresno_____ in the _____Eastern_____ District of _____California_____, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. 846 | Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance |
| | Maximum Penalties:<br>20 years imprisonment<br>$1,000,000 fine<br>Supervised Release Term of at Least 3 years Up to Life<br>$100 special assessment |

This criminal complaint is based on these facts:

See attached affidavit of SA Michael Larson

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Michael Larson, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone

Date:   _____08/19/2025_____

_____
*Judge's signature*

City and state:   _____Fresno, California_____     Hon. Stanley A. Boone, US Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Michael Larson, being first duly sworn, hereby depose and state as follows:

## I.     INTRODUCTION AND AGENT BACKGROUND

1.     This affidavit is made in support of a criminal complaint and arrest warrant for **James Key III w**ith a violation of Title 21, United States Code, Section 846 – conspiracy to distribute and possess with intent to distribute a controlled substance. The information set forth in this affidavit is not intended to detail each and every fact and circumstance of the investigation or all the information known to me and other law enforcement investigations. Rather, this affidavit serves only to establish probable cause for the arrest of **James Key III**.

2.     I am a Special Agent with the Federal Bureau of Investigation (FBI), and I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C). I have been a Special Agent with the FBI since October 2015. I received basic law enforcement instruction at the FBI Academy from approximately June 2015 through October 2015. I am currently assigned to the FBI Sacramento Division – Fresno Resident Agency. I investigate violations of Titles 18 and 21 of the United States Code and Title 28 of the Federal Code of Regulations. During my career, I have interviewed gang members, narcotics traffickers, firearms traffickers, and have participated in the debriefing of cooperators, witnesses, confidential human sources ("CHS"), and defendants who had personal knowledge regarding criminal street gang activity, major narcotics trafficking organizations, and other criminal offenses. I am familiar with the methods, language, structures, and criminal activities of street gangs and contraband traffickers, including criminal enterprises operating in federal prisons. I am also familiar with the various methods used by narcotics traffickers to facilitate the shipment, storage/concealment, and sales of illegal narcotics. These methods include the use of telephones, cellular telephones, social media applications, encrypted messaging applications, wireless communication technology, counter surveillance, elaborately planned smuggling schemes, the use of multiple bank accounts, peer to peer money transfer applications, false or fictitious identities, and the use of coded or vague communications to thwart law enforcement.

1

3.      Additionally, I have become knowledgeable about the investigative techniques that are useful and viable in investigations involving criminal enterprises and contraband traffickers and those that are not viable.  I have also consulted with other investigators who have extensive training and experience in criminal enterprises and financial investigations.  I have executed search warrants for gang and narcotics investigations, seeking evidence of the trafficking of controlled substances, weapons violations, gang indicia, and violent crimes.  I have participated in gang, narcotic, firearms, and human trafficking investigations which utilized court-ordered interceptions of wire and electronic communications to assist in dismantling violent criminal street gangs and drug and/or firearms trafficking organizations.

4.      During my review of legally recorded jail phone calls, electronic mail, text messages, social media postings, and social media messages in previous cases, I have noted several slang terms used in reference to illegally-obtained items, illegally-possessed items, and/or violent crime.  I have learned that the purpose of the use of slang during phone calls, social media messages, and text messages is to obstruct law enforcement investigations.

5.      I have personally participated in the investigation set forth below.  I am familiar with the facts and circumstances of the investigation through my personal participation; from discussions with other agents of the FBI and other law enforcement; and from my review of records and reports relating to the investigation.

6.      I know from my training, experience, and the current investigation, that drug traffickers utilize vehicles to facilitate criminal activities, including but not limited to the transportation of drugs, other contraband, and/or the trafficker him/herself to the location of the illegal contraband.

7.      Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another agent, law enforcement officer or witness who may have had either direct or hearsay knowledge of that statement and to whom I or others have spoken or whose reports I have read and reviewed.  Such statements are among many statements made by others and are stated in substance and in part unless otherwise indicated.

2

8.      Since this affidavit is being submitted for the limited purpose of obtaining and arrest warrant for **James Key III**, I have not included details of every aspect of the investigation.  Facts not set forth herein are not being relied on in supporting probable cause. Nor do I request that this Court rely on any facts not set forth herein in reviewing this application.

9.      The application is made for a criminal complaint and arrest warrant charging **James Key III** with violating Title 21, United States Code, Section 846 – conspiracy to distribute and possess with intent to distribute a controlled substance.

## II.      <u>PROBABLE CAUSE</u>

10.     On several occasions between October 2024 and January 2025, Bureau of Prisons (BOP) staff at the Federal Correctional Complex (FCC) Coleman in Wildwood, FL received electronic alerts via their drone detection software that a Mavic 2 drone was detected inside their airspace.

11.     On 12/16/2024, at approximately 6:25 am, BOP staff at FCC Coleman recovered a wrapped package containing one cellular phone, one phone charge cord, and two sheets of paper soaked in an unknown substance. The unknown substance later tested positive for fentanyl powder. According to a BOP report, correctional officers heard a drone in the area before the package was recovered.

12.     Investigators with the BOP and the FBI began an investigation.  Flight records obtained by the FBI from a Senior Federal Air Marshal indicated that at least three occasions, a Mavic 2 drone entering FCC Coleman's airspace had originated from the same residential address:  2909 Pinetree Road, Eustis, FL 32726-7051.  Public records checks and open source checks conducted by the FBI in Jacksonville, FL revealed that **James Key III** was a listed resident at the residence.  BOP Special Investigative Services (SIS) investigators at FCC Coleman, also determined that **James Key III** was a listed as contact of another BOP Inmate, Roger KEY (Reg. No. 43656054).  A review of the BOP Inmate History Quarters for Inmate Roger Key shows he was incarcerated at FCC Coleman on 12/16/2024 when the wrapped package referenced previously was recovered.

13.     On April 2, 2025, BOP SIS at FCC Coleman provided the FBI with a letter received by SIS from an anonymous source.  The letter stated that the drone activity at FCC Coleman was caused by

3

an inmate residing in Cell 206 in E-Unit. A review of BOP Inmate History Quarters showed cell 206 in E-Unit was occupied by inmate Roger Key (Reg. No. 43656054) from July 13, 2024 to March 19, 2025, when the bulk of the drone activity occurred.

14.    In/around July 2025, BOP SIS investigators obtained jail calls between Inmate Ronnie Gonzalez (Reg. No. 41893-054), an inmate at United States Penitentiary Atwater ("USP Atwater"), located in Fresno County, California, and the user of a cellular phone assigned call number (352) 801-8458 (believed to be **James Key III**) concerning the suspected delivery of narcotics and possibly cellular devices into USP Atwater.  On a jail call on July 20, 2025 between Inmate Gonazlez and the user of (352) 801-8458, Inmate Gonazlez told the user "the stuff is going to be in tomorrow".  The user indicated he was "waiting for 4 and there were already 15 going on there".  The user further indicated that he "has two floor plans".  The user "has one and the other dummy has the other floor plan".  The user continued, indicating that "they made the square footage bigger" without talking to him.  Finally, the user indicated he "can't wait on the female for the other package".  Based on my training and experience, I believe they were discussing the arrival of the narcotics and cellular devices for the drone delivery.  Further, I believe the user of (352) 801-8458 was waiting for 4:00 am to initiate the drone delivery, and that there were 15 total phones to introduce.  Additionally, the size of the drone package was increased without the user's approval.  Finally, I believe that only the cell phone package arrived for the delivery, and that the afore mentioned female was supposed to provide the narcotics package.

15.    Based on the jail calls, Inmate Ronnie Gonzalez and the user of (352) 801-8458 (believed to be **James Key III**) discussed a suspected drone delivery of contraband on/about July 21, 2025. On/about July 22, 2025 Inmate Ronnie Gonzalez and the user of (352) 801-8458 had another jail call in which the user of (352) 801-8458 indicated that he had attempted a drone delivery on July 21, 2025, but that it was too windy and too many people were outside.  The user of the (352) 801-8458 indicated he "went to Christie's house last night, the party was crazy, the wind was blowing, people thought they saw UFOs and people were coming outside" so he just went back inside.  Based on my training and experience I believe they were discussing the failed drone delivery on July 21, 2025, because of bad

weather and too many people in the area.

16.    In another call on July 22, 2025 between Inmate Ronnie Gonzalez and the user of (352) 801-8458 (believed to be **James Key III**), the user indicated he "has all the tools there" and he "bought a storage unit" since he has to come back there.  The user further indicated he "will be back in two or three weeks and won't have to worry about the headache" he is going through now.  The user also told Inmate Gonzalez he is "going to buy a car and just leave it over there in a unit" so that he did not have to "drive his truck back and forth".  Based on my training and experience, I believed they were discussing storing property to be used in connection with drone deliveries at the Target Location.

17.    Based on information received on recorded jail calls regarding **James Key III**'s activities while in Merced, CA between July 18, 2025 and July 22, 2025, BOP SIS contacted and visited local hotels and storage units in Merced, CA to ask if anyone named James Key was recently there.  BOP SIS provided a photograph of **James Key III** to hotel staff at the Days Inn, 1215 R St, Merced, CA 95341, and confirmed that **James Key III**, the suspected user of (352) 801-8458, rented a room from July 18, 2025 through July 22, 2025.  This hotel is approximately 8.5 miles from USP Atwater.

18.    BOP investigators continued to monitor Inmate Gonzalez's phone calls, as well as phone calls being made by Inmate Roger Key, who had recently transferred to United States Penitentiary Victorville (USP Victorville).  On July 24, 2025, Inmate Roger Key called the user of (352) 801-8458 (believed to be **James Key III**).  The user said he and another unknown individual "took the job all the way to Hartford. The job is doable, but it's tough." The user further said, "it's not like you remember it and it's not like I seen it."  Additionally, the user of (352) 801-8458 said he did not "know when bro is going to move from 321 out there."  Further, the user said, "the materials for the houses are already out there" because he "rented a storage unit and left it out there."  Based on my knowledge of this case, my training, and experience, I believe 321 is in reference to FCC Coleman in Florida, and Hartford is in reference to USP Victorville in California.  Additionally, when the user says, "it's not like you remember it", this is in reference to Inmate Roger Key's previous incarceration at USP Victorville.  Finally, when the user discusses the materials for the houses already being there, I understand this to be

coded language saying that because of the failed drone delivery attempt on July 21, 2025, the contraband was placed into the address for future use.

19.    On August 4, 2025, Inmate Roger Key called the user of (352) 801-8458 (believed to be **James Key III**). On that call, the user of (352) 801-8458 told Inmate Roger Key that he was "going to be going to Connecticut". The user indicated he had lost his job in Florida and that as soon as someone sends him money, he "is going". The user says he is "looking at going the week of the 16th to the 20th". The user asked Inmate Roger Key "remember those houses we were doing; they called me back talking about they want ice machines".  Based on my knowledge of the case, my training, and experience, I believe that Connecticut is code for California, and that the user of (352) 801-8458 will travel to California on or about August 16, 2025 and recover contraband items from a storage facility in close proximity to USP Atwater to conduct a drone delivery into USP Atwater.  Additionally, the user is referencing the previous drone delivery, adding that now they want "ice machines".  I know that this term is coded language for crystal methamphetamine.

20.    On Saturday, August 16, 2025, FBI Orlando observed **James Key III** arriving at Orlando International Airport.  **James Key III** was subsequently observed boarding United Airlines flight 1957, a nonstop flight between Orlando and San Francisco International Airport.  This flight departed Orlando International Airport at approximately 8:20 am EST with an estimated arrival time at San Francisco International Airport of 10:59 am PST.  Photographs of the **James Key III** at the airport and at the departure gate, as well as a photograph of the **James Key III**'s boarding pass were taken.  **James Key III** departed San Francisco Internation Airport in a black Volkswagen GTI, with California license plate 9NUM822.

21.    On August 17, 2025, an FBI Task Force Officer visited the Days Inn, 1215 R St, Merced, CA 95341, to ask if anyone named James Key had checked into the hotel in the last two days.  Hotel staff confirmed that an individual using the name James Key checked into the hotel on Saturday, August 16, 2025, and was assigned hotel room 229.  Hotel staff were shown a photograph of **James Key III** and they confirmed that the individual in the photograph was the individual who checked into the hotel.

Hotel staff provided a Days Inn Registration form for James Key. This form lists the name James Key, with telephone number 352-801-8458, and address 2909 Pinetree Rd, Eustis, FL 32726. Additionally, the form lists vehicle information for James Key. The vehicle listed is a Volkswagen GTI, with license plate number 9NMU822. Based on my knowledge of the case, I know that telephone number 352-801-8458 is utilized by **James Key III**. I also know that **James Key III** is listed as a resident of 2909 Pinetree Rd, Eustis, FL 32726. Finally, **James Key III** was observed by FBI Agents renting a black Volkswagen GTI, with California license number 9NUM822 at the San Francisco International Airport.

22.     On Sunday August 17th, 2025, FBI Agents and Agents from the California Department of Corrections and Rehabilitation (CDCR), observed the black Volkswagen GTI with California license number 9NUM822, currently rented under the name James Key, inside the fence of Purely Storage, 1236 W 13th St, Merced, CA. This facility is known to have a storage unit rented under the name James Key. The Volkswagen GTI with California license plate number 9NUM822 was observed arriving at the Days Inn, 1215 R St, Merced, CA 95341, and parking in the vicinity of hotel room 229. An individual matching the description **James Key III** was observed exiting the vehicle, retrieving a large box from the back seat, and carrying the box as well as a smaller shoulder bag approximately the size of a lunchbox into the hotel room. The individual then exited the hotel room again, returned to the vehicle, retrieved a different box that appeared to be heavy, carried the box into the hotel room and shut the door.

23.     At approximately 2:30 am, August 18th, 2025, **James Key III** departed the hotel room and was not observed to be carrying any of the items he previously took into the room. **James Key III** departed the hotel within the pre-determined window of time in which the drone narcotics introduction was to occur at USP Atwater based on jail calls. Aerial and ground surveillance was initiated by FBI and CDCR Agents, as well as Deputies from the Merced County Sheriff's Office (MCSO). **James Key III** departed Merced, driving in a northwest direction towards USP Atwater. Once **James Key III** initiated a northbound turn onto Fox Road, which leads directly towards USP Atwater, MCSO Deputies initiated a traffic stop of the subject vehicle. No contraband items were found on the **James Key III**'s person or inside the vehicle.

24.     After the traffic stop of the subject was initiated, a search warrant for the **James Key III**'s storage unit was executed at, unit E032, Purely Storage, 1236 W 13th St, Merced, CA 95341. Storage unit E032 did not contain any items and the lock had been removed.  Based on my training and experience, and my knowledge of this case, I believed the boxes the **James Key III** carried into the hotel room contained narcotics, other contraband, and possibly a drone to be used to introduce these narcotics and other contraband materials into USP Atwater.  Additionally, because no contraband was discovered on the **James Key III**'s person or in the vehicle, and because no contraband items were discovered in the storage unit, I believe the contraband and contents of the boxes were located in the hotel room.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

25.     On August 18, 2025, a search warrant for **James Key III**'s hotel room was executed at the Days Inn, 1215 R St, Merced, CA 95341, room 229.  During the search, agents located the previously identified boxes **James Key III** was observed carrying into the room.  These boxes were determined to contain drug packaging materials, to include a vacuum sealer, vacuum bags, and artificial grass.  Agents seized one drone, one SD card inside the drone, one drone drop mechanism to attach to the drone, one cell phone, tobacco products, and multiple sets of vacuum sealed sheets of white paper believed to be soaked in narcotics.  One such bundle of vacuum sealed sheets of white paper had been cut into small rectangles and tightly packaged into a bundle.  See picture below:



26.     Based on my training and experience, and my knowledge of the case, I know that the specific size of the cut rectangles is a common size used by narcotics traffickers to introduce fractions of a full sheet of paper soaked in narcotics into federal prisons.  For example, four rectangles would represent a half sheet and eight rectangles would represent a full sheet.  Additionally, the size of the

9

bundle of the vacuum sealed sheets of white paper is compatible with the load capacity of the drone drop mechanism discovered in the hotel room.  I further know that drones are frequently used by narcotics traffickers to introduce narcotics into federal prisons by flying over the perimeter fence of the prison, and utilizing a drone drop mechanism to release a payload inside the prison fence.  Additionally, I know that narcotics traffickers use artificial grass to camouflage the narcotics packages to be dropped into federal prisons so the packages can avoid detection until recovered by a specific inmate in the prison.

## VI.  CONCLUSION

27.    Based on the foregoing, I believe there is probable cause to believe that **James Key III** violated Title 21 U.S.C. § 846 (conspiracy to distribute and possess with intent to distribute a controlled substance).  Therefore, I request that an arrest warrant be issued for **James Key III** for this violation.

28.    I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Respectfully submitted,

Michael Larson
Special Agent
Federal Bureau of Investigation


Affidavit submitted to me by reliable electronic means and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1, 4(d), and 41(d)(3) on __Aug 19, 2025_____.


Hon. STANLEY A. BOONE
UNITED STATES MAGISTRATE JUDGE


Reviewed and approved as to form:
    /s/ Jeffrey A. Spivak_____
    JEFFREY A. SPIVAK
    Assistant U.S. Attorney

10